IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL JAMES FRANITTI, )
)
Plaintiff, )
) Civil Action No. 20-1803
vs. )
)
KILOLO KIJAKAZI,[1] )
*Acting Commissioner of Social Security*, )
)
Defendant.

ORDER

AND NOW, this 14th day of June 2022, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 16) filed in the above-captioned matter on August 26, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on July 19, 2021,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion is granted insofar as he seeks remand for further administrative proceedings and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") pursuant to sentence four of 42 U.S.C. § 405(g).

I. **Background**

Plaintiff applied for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. § 401, *et seq.*, on June 11, 2018. (R. 15). The Administrative

---

[1] Kilolo Kijakazi is hereby substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d), a change that has no impact on the case. 42 U.S.C. § 405(g). The Clerk is directed to amend the docket to reflect this substitution.

Law Judge ("ALJ") who considered his claim found Plaintiff was not disabled and denied his DIB application. (R. 16, 29). The ALJ's decision became the final decision in this matter when the Appeals Council denied Plaintiff's request for review. (R. 1). 20 C.F.R. § 404.981. Plaintiff has sought the Court's review of the decision and argues it is unsupported by substantial evidence in the record.

## II.     Standard of Review

An ALJ's decision is subject to substantial evidence review. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)). The threshold for substantial evidence is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It demands only "more than a mere scintilla," *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate." *Plummer*, 186 F.3d at 427 (citing *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). If the reviewing court determines that the ALJ's decision is supported by substantial evidence, it may not "re-weigh" the evidence, *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011), not even if there is "evidence in the record that supports a contrary conclusion." *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009). However, the ALJ's decision may not be found to be supported by substantial evidence if the ALJ failed to address "obviously probative exhibits" or rejected evidence for "no reason or for the wrong reason." *Cotter v. Harris*, 642 F.2d 700, 705—06 (3d Cir. 1981) (citations omitted).[2]

---

[2]     The reasonable-mind language used to describe "substantial evidence" is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "A single piece of evidence will not satisfy the substantiality test" if evidence contrary to the ALJ's decision is ignored or where the evidence cited in support of a decision "is overwhelmed by other evidence." *Id.* If reviewing courts apply any lesser a standard, their "review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id.*

To determine whether a claimant is disabled under the Act, ALJs use a five-step evaluation. 20 C.F.R. § 404.1520; *Plummer*, 186 F.3d at 428. At step one, the ALJ asks whether the claimant is engaged in "substantial gainful activity." *Plummer*, 186 F.3d at 428 (citation omitted). At step two, the ALJ asks whether the claimant has any severe, medically determinable impairments. *Id.* (citation omitted). At step three, the ALJ compares the claimant's impairment(s) to the impairments listed at 20 C.F.R., Pt. 404, Subpt. P., Appx. 1. *Id.* (citation omitted). The "Listings" impairments are a compilation of "impairments which are considered severe enough to prevent a person from doing any gainful activity" in each major body system. *Eden v. Berryhill*, No. 2:16-CV-03703, 2017 WL 1404380, at *14 (S.D.W. Va. Mar. 28, 2017), *report and recommendation adopted*, No. CV 16-3703, 2017 WL 1398341 (S.D.W. Va. Apr. 18, 2017) (citing 20 C.F.R. § 404.1525). If a claimant is found to "suffer from a listed impairment or its equivalent," the five-step evaluation terminates in the claimant's favor at step three. *Plummer*, 186 F.3d at 428.

If the claimant cannot prove that he or she is disabled at step three, the ALJ moves to step four and asks whether the claimant's residual functional capacity ("RFC") would permit a return to past relevant work. *Id.* (citation omitted). The claimant's RFC is the most the claimant can do despite limitations that arise from his or her medically determinable impairments. SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1545(a)(1). If the claimant cannot return to past relevant work, then the burden of proof that rests on the claimant through step four shifts for the fifth and final step where it is incumbent upon the ALJ to identify other work that the claimant could do with his or her RFC and vocational characteristics. *Plummer*, 186 F.3d at 428 (citation omitted). If such work does not exist or offers an insufficient number of available jobs, disability is established. *Id.*

### III. The ALJ's Decision

In this matter, the ALJ found Plaintiff had not engaged in substantial gainful activity at step one. (R. 17). At step two, the ALJ found the following severe, medically determinable impairments: "obesity, degenerative joint disease, status post bilateral total knee replacements, obstructive sleep apnea, depression, and anxiety." (R. 18). At step three, the ALJ considered whether Plaintiff had demonstrated the criteria for several of the Listings. (R. 19—21). Among them, she considered Listing 1.02 (major joint dysfunction) and Listing 1.03 (reconstructive surgery of a major weight-bearing joint). (R. 19). However, she determined Plaintiff did not meet the criteria for those two Listings because he had not demonstrated the inability to "ambulate effectively." (R. 19).

Having determined Plaintiff's impairments were not presumptively disabling, the ALJ went on to formulate a modified light-work RFC for Plaintiff. (R. 21). At step four, the ALJ found Plaintiff's RFC would not permit a return to past relevant work. (R. 27). But, at step five, the ALJ found Plaintiff's RFC and other vocational characteristics would permit adjustment to other occupations such as a "Food and Beverage Order Clerk" or "Dowel Inspector." (R. 28). Jobs in those occupations totaled over two-hundred thousand nationally. (*Id.*). Therefore, the ALJ determined that Plaintiff was not disabled under the Act. (R. 29).

### IV. Legal Analysis

Plaintiff has requested remand and an order to award benefits. His primary argument for remand is that the ALJ erred in the Listings determination. He argues that the ALJ's consideration of the criteria for Listing 1.02 is deficient because she failed to grapple with uncontradicted evidence proving he could not ambulate effectively. Plaintiff argues the ALJ further erred at step three by failing to explicitly consider whether the combination of his knee

4

impairments and severe obesity constituted the medical equivalent of Listing 1.02. Lastly, Plaintiff raises several challenges to the ALJ's RFC determination. Having considered Plaintiff's contentions, the Court has determined that the lack of clarity in the ALJ's effective ambulation finding for the Listings analysis necessitates remand.[3]

The Listings are "a regulatory device used to streamline the decision-making process by identifying claimants whose impairments are so severe that they may be presumed to be disabled." *Harold v. Berryhill*, No. CV 18-09-E, 2019 WL 1359244, at *1 n.1 (W.D. Pa. Mar. 26, 2019) (citing 20 C.F.R. § 404.1525(a)). Accordingly, listed impairments are of such severity that they preclude "any gainful activity," as opposed to "just substantial gainful activity." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). Because the Listings preclude all work, claimants whose impairment(s) meet or equal a Listing are found to be disabled without further inquiry into whether they have an RFC that would permit past work or adjustment to other work. Claimants bear the burden of proving that their impairment(s) meet or equal the criteria of a Listings impairment. *Id.* (citing 20 C.F.R. § 404.1526). A claimant must "show his [or her] impairment . . . meet[s] *all* of the specified medical criteria" for the Listing. *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* (citing *Sullivan*, 493 U.S. at 530).

---

[3] The Court's consideration of Plaintiff's challenges to the ALJ's RFC finding has revealed no error. Plaintiff argued that the ALJ did not appropriately weigh his alleged pain, nor the persuasive value of the medical opinion evidence from Ellen Rader Smith (Occupational Therapist) and Dr. Edward Garofolo (primary care physician). But, having reviewed the ALJ's discussion of this evidence, the Court is satisfied that the ALJ thoughtfully considered Plaintiff's alleged pain (R. 22) and the opinions of both Ms. Rader Smith and Dr. Garofolo (R. 25—26). Plaintiff's arguments in this regard are mere requests to re-evaluate that evidence which, of course, this Court may not do. *Chandler*, 667 F.3d at 359.

For Listing 1.02, claimants must prove that they have a "gross anatomical deformity" with "chronic joint pain and stiffness," "signs of limitation of motion or other abnormal motion," and medical imaging that shows "joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.  There must also be "involvement of one major peripheral weight-bearing joint," such as the knee, that results in the "*inability to ambulate effectively*, as defined in 1.00B2b," *id.* § 1.02(A) (emphasis added); or an affected "major peripheral joint in each upper extremity" that impairs "fine and gross movements." *Id.* § 1.02(B).  The ALJ in this matter considered whether Plaintiff's "degenerative joint disease and status post total knee replacements" met the criteria for Listing 1.02. (R. 19).  The first criterion—existence of a "gross anatomical deformity"—was not in question.  But the ALJ ultimately determined that Plaintiff had not demonstrated the inability to ambulate effectively. (*Id.*).

Section 1.02(A) directs ALJs to Section 1.00B2b for the definition of the "inability to ambulate effectively."  Therein, the regulations articulate the meaning of the "Inability To Ambulate Effectively" in two subsections.  *Id.*  The first, "*Definition*," explains that the

> [i]nability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

*Id.* § 1.00B2b(1).  The second subsection explains what functions are necessary "[t]*o ambulate effectively*," and specifies that an individual

> must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of

> daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. *Therefore, examples of ineffective ambulation include*, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, *the inability to walk a block at a reasonable pace on rough or uneven surfaces*, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* § 1.00B2b(2) (emphasis added).

In this matter, when the ALJ found Plaintiff "retain[ed] the ability to ambulate effectively," she explained her finding, writing that Plaintiff did not "require the use of a two-handed assistive device." (19). Plaintiff argues this explanation is insufficient to support the ALJ's finding because while it shows the ALJ considered ineffective ambulation as it is "generally" defined in Section 1.00B2b(1)—as the inability to ambulate without a two-handed assistive device—there is no indication that the ALJ considered 1.00B2b(2), *i.e.*, whether Plaintiff could "[sustain] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Plaintiff argues the ALJ's error in this regard was harmful because there is medical opinion evidence in the record showing he cannot ambulate thus. Dr. Einat Rabinovich, M.D., examined Plaintiff in September 2018 pursuant to a referral from the Bureau of Disability Determination and opined that Plaintiff *could not* "walk a block at a reasonable pace on rough or uneven surfaces[.]" (R. 797). Her opinion in this regard specifically corresponds to one of the examples of ineffective ambulation in Section 1.00B2b(2).

The Court finds that, in her consideration of the evidence pertaining to Plaintiff's ability to ambulate effectively, the ALJ should have addressed Dr. Rabinovich's opinion. Because Dr.

Rabinovich's opinion directly corresponded to an example of ineffective ambulation at Section 1.00B2b(2), it was relevant to the determination of whether Plaintiff could ambulate effectively. The Court acknowledges that the ALJ considered Dr. Rabinovich's opinions in her assessment of Plaintiff's RFC. (R. 25). However, her discussion of Dr. Rabinovich's rough-or-uneven-block opinion is not clear enough to discern whether she accepted or rejected that specific opinion. Discussing Dr. Rabinovich's opinions, the ALJ wrote:

> Dr. Einat Rabinovich opined that the claimant could . . . stand for 1 hour at a time and for 3 hours total in an 8-hour day, and walk for 1 hour at a time and for 3 hours total in an 8-hour day . . . . She opined that the claimant could not walk a block at a reasonable pace on rough or uneven surfaces . . . . The undersigned finds her opinion to be somewhat persuasive. The record supports limiting the claimant's standing and walking secondary to his bilateral knee replacements and ongoing antalgic gait.

(R. 25). From this discussion, it is not clear to the Court that the ALJ rejected the rough-or-uneven-block opinion. And, if the ALJ did not reject that opinion, it is unclear how she reconciled it with her finding that Plaintiff could ambulate effectively at step three. Where, as here, the basis of the ALJ's decision is unclear, the Court ought to remand for further administrative proceedings. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (citation omitted) ("[A] reviewing court may remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'").

By its decision, the Court does not suggest that claimants may prove ineffective ambulation by offering evidence that their limitations align with one of the examples of ineffective ambulation in Section 1.00B2b(2). One of the other examples of ineffective ambulation therein is "the inability to use standard public transportation," *id.*, but it is certainly

8

not the case that any claimant who has demonstrated an inability to use public transit has necessarily proven ineffective ambulation. However, in this case where there is a medical opinion in the record that Plaintiff cannot walk a rough or uneven block at a reasonable pace and the ALJ found that opinion "somewhat persuasive" (R. 25), the ALJ erred in failing to explain how she reconciled that evidence with her Listings determination. To Defendant's point that the opinion at issue is weak evidence because it is a mere checkbox opinion without accompanying notes or explanation, *see Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993), that is certainly something the ALJ may consider in deciding the value of the opinion and how it might factor into the decision on remand. *See Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (explaining that reviewing courts may not affirm an ALJ's decision for reasons "not mentioned by the ALJ").[4]

---

[4]  Two decisions guided the Court's consideration of this matter: *Rosario v. Commissioner of Social Security*, 2018 WL 1535214 (D.N.J. Mar. 29, 2018), and *Pearson v. Commissioner of Social Security*, 839 Fed. Appx. 684 (3d Cir. 2020). In both cases there was evidence in the record suggesting that the claimant could not walk a rough or uneven block at a reasonable pace. In *Rosario*, there was a medical source statement in evidence that indicated the claimant "could not 'walk a block at a reasonable pace on rough or uneven surfaces,' and that [the claimant] 'ambulate[d] with marked difficulty, holding onto the walls for support.'" 2018 WL 1535214, at *5. The ALJ in that matter considered the second part of the statement—the claimant's difficulty ambulating and use of walls for support—but did not explicitly consider the statement as it reflected the claimant's ability to walk a rough or uneven block. *Id.* Accordingly, the court remanded the decision in part because the ALJ had not "provide[d] any reasoning or discuss[ed] whether [the claimant] was unable to effectively ambulate and if so what effect this had on Plaintiff's ability to meet one of the listed impairments." *Id.* The court added that, on remand, the ALJ could certainly conclude that the claimant "did not meet a listed impairment." *Id.* at *6.

In *Pearson*, evidence in the record indicated that a nurse practitioner who evaluated the claimant similarly opined that the claimant "could not walk a block at a reasonable pace on rough or uneven surfaces." 839 Fed. Appx. at 686. Unlike the ALJ in *Rosario*, the ALJ who heard Pearson's claim explained that the checkbox opinion was "not supported by the other medical evidence" and lacked weight for its want of accompanying "exam notes." *Id.* at 689. Thus, the panel of the Third Circuit that reviewed the case determined that though the nurse practitioner "checked a box which could support a finding of an inability to ambulate," *id.*, the

Having determined that remand is appropriate to remedy the ALJ's oversight of relevant evidence pertaining to Plaintiff's ability to ambulate effectively, the Court need not reach Plaintiff's other step-three argument that the ALJ failed to consider whether Plaintiff's knee impairments and severe obesity, combined, might have been found to medically equal the criteria for Listing 1.02.[5]  On remand, if the ALJ finds Plaintiff has failed to demonstrate that he meets a Listing, Plaintiff will have the opportunity to argue the matter of medical equivalency.

V.      **Conclusion**

Based on the foregoing, the Court finds further administrative proceedings are necessary. Concerning Plaintiff's request that the Court direct the Commissioner to award benefits, reviewing courts should order such an award "only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits." *Bruce v. Berryhill*, 294 F. Supp. 3d 346, 366 n.16 (E.D. Pa. 2018) (citing *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986)).  The courts also consider whether a claimant's "disability determination process has been delayed due to factors beyond [his/her] control." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d

---

ALJ's rejection of that opinion evidence was adequate such that the ALJ's step-three finding was supported by substantial evidence. *Id.*

The ALJ's decision in this matter is more like the ALJ's decision in *Rosario* than in *Pearson*. Here, as in *Rosario*, Dr. Rabinovich's opinion that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces is not evidence that necessarily proves the inability to ambulate effectively. However, because such evidence *could* prove Plaintiff lacked the ability to ambulate effectively, the ALJ should have addressed it.

[5]      Claimants whose impairments do not meet the criteria for a Listing may nonetheless prove disability at step three if they can show medical equivalency. *Eden*, 2017 WL 1404380, at *14. To prove equivalency, a claimant must "present evidence that his impairment, unlisted impairment, or combination of impairments, is equal in severity and duration to all of the criteria of a specific listed impairment." *Id.* (citing *Sullivan*, 493 U.S. at 530).

Cir. 2008).  The record before the Court does not definitively indicate that Plaintiff is disabled and is entitled to benefits, nor has Plaintiff suffered any unusual delay; therefore, Plaintiff's request for an order that benefits be awarded is denied.  Accordingly, the Court hereby remands this matter to the Commissioner for proceedings consistent with the Order.

s/ Alan N. Bloch<br>United States District Judge

ecf:    Counsel of Record